Nels SORENSON, dba Sorenson Egg Farm,
Appellant,

v.

SHUPE BROS. CO., Appellee.

No. 8484.

Court of Civil Appeals of Texas,
Amarillo.

Dec. 31, 1974.

Rehearing Denied Jan. 20, 1975.

Culton, Morgan, Britain & White, Sam R. Cummings, Amarillo, for appellant.

Arthur J. Lamb, Amarillo, for appellee.

ELLIS, Chief Justice.

In this suit on an account, Nels Sorenson, dba Sorenson Egg Farm, defendant-appellant, has appealed from a judgment entered by the trial court awarding Shupe Bros. Co., plaintiff-appellee, recovery against the defendant for the amount of the account alleged, plus interest, costs and attorney's fees. Affirmed.

The plaintiff sought recovery on an unpaid account for certain feed ingredients allegedly sold by the plaintiff to the defendant in the sum of $1,183.80, together with interest at the rate of 1% from June 1, 1972, costs and attorney's fees. The defendant answered by sworn denial of the account, stating, among other matters, that the items were not purchased by the defendant. In addition, defendant alleged that he had sold his business known as "Sorenson Egg Farm" to James R. Daughtery prior to the time of the sale of the disputed ingredients and that the defendant had previously ordered all ingredients for such business from James Monk, an agent of plaintiff, either actual or apparent, who had notice of such sale of the business. Plaintiff alleged that James Monk was an independent broker; that James R. Daughtery was an apparent or actual agent of defendant Sorenson; that Sorenson was estopped from denying he was the owner of Sorenson Egg Farm because he knowingly allowed business to be continued under the name Sorenson Egg Farm; and that plaintiff had no knowledge of the sale of the business prior to the sale of the ingredients in question.

Upon a trial to the court, sitting without a jury, judgment was entered for plaintiff in the amount of $1,183.18, plus interest at the rate of 6% per annum from January 1, 1972, costs and attorney fees in the amount of $450. Pursuant to defendant's request, the court filed its findings of fact and conclusions of law. Thereafter, the defendant requested additional findings, and the court filed a portion of such findings while certain requested findings were refused. Defendant predicated his appeal from the judgment entered upon 30 points of error.

It is undisputed that prior to April, 1971, Nels Sorenson operated an egg and poultry business under the name "Sorenson Egg Farm" at 4420 East 22nd in Amarillo, Texas, for a period in excess of 10 years without an assumed named certificate being filed. It is also not disputed that defendant Sorenson had used ingredients supplied by plaintiff Shupe Bros. Co. with all sales on a cash basis until October 16, 1970, when an account was opened in the name of "Sorenson Egg Farm." Thereafter, sales were arranged from Shupe Bros. Co. to Sorenson Egg Farm through James A. Monk, whose status is in dispute. Deliveries were made by Shupe Bros. to Sorenson Egg Farm receipt of which were acknowledged by Sorenson or an employee and entered upon the account of Sorenson and billed. Payment by check was then made by Sorenson either through the mail or delivery through Monk to Shupe Bros. Co.

Further, it is not disputed that the business Sorenson Egg Farm was sold to James R. Daughtery on or about April 16, 1971; that possession by the buyer was taken between April 20 and May 11, 1971; and that written notice of the sale was not given to the creditors of the business. It is also not disputed that orders for the ingredients in question were placed with Shupe Bros. Co. in the early part of July, 1971, and that they were delivered to Sorenson Egg Farm located at 4420 East 22nd, Amarillo, Texas. The basic question to be determined is whether Nels Sorenson is liable for the price of the ingredients ordered and delivered after the sale of the business to James R. Daughtery.

In order to determine the liability of defendant Nels Sorenson, it is first necessary to ascertain the status of James Monk. The trial court found that James Monk was an agent of defendant Nels Sorenson and that plaintiff relied upon the apparent

authority of Monk to bind Nels Sorenson for the purchase price of the ingredients in question. The court further found that James Monk did not have either express or apparent authority to act for Shupe Bros. Co. The trial court refused to make the requested findings that James Monk was the apparent agent of Shupe Bros. Co. with the apparent authority to act for such company. By points 7–10 and 13–16, appellant contends it was error for the trial court to make such findings because there is no evidence to support them or that such findings are against the great weight and preponderance of the evidence. In addition, appellant contends by points 11 and 12 that the trial court erred in failing to make the requested findings that Monk was the apparent agent of and had apparent authority to act as an agent for Shupe Bros. Co.

 In a nonjury case, the trial court is the judge of the credibility of the witnesses and the weight to be given their testimony, and the findings of the court are entitled to the same weight and conclusiveness on appeal as the verdict of a jury. Where there is evidence of probative force to support the findings and judgment of the trial court such findings are controlling. Heard v. City of Dallas, 456 S.W.2d 440 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e.). When determining whether the findings are supported by any evidence of probative value the reviewing court will give credence only to the evidence favorable to the findings, and disregard all evidence to the contrary. Brown v. Frontier Theatres, Inc., 369 S.W.2d 299 (Tex.1963). Also, see 4 Tex.Jur.2d Rev. Part 2, Appeal and Error—Civil Cases § 783 at 286 (1974) and cases cited therein. In addition, since the appellant contends that the findings are so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust, it is necessary to weigh all of the evidence in the case regardless of whether the record contains some evidence of probative force in support of the findings. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

 It is well established that "The relation of agency is a consensual relation existing between two persons, by virtue of which one of them is to act for and in behalf of the other and subject to his control." See Roper v. Compania De Perforaciones Y Servicio, S.A., 315 S.W.2d 30 (Tex.Civ.App.—Austin 1958, writ ref'd n. r. e.); Restatement (Second) of Agency § 1 (1957). Further, it is established that an agent is one who is authorized by another to transact business or manage some affair for him. First Nat. Bank of Mineola v. Farmers and M. State Bank, 417 S.W.2d 317 (Tex.Civ.App.—Tyler 1967, writ ref'd n. r. e.). In the law of agency it is recognized that apparent authority is based on estoppel, and this arises from two sources: first, the principal may knowingly permit an agent to hold himself out as having authority, and in this way the principal becomes estopped to claim that his agent does not have authority; and second, the principal may knowingly or by want of care so clothe the agent with indicia of authority as to lead a reasonably prudent person to believe that he actually has such authority. Great American Casualty Co. v. Eichelberger, 37 S.W.2d 1050, 1053 (Tex.Civ.App.—Waco 1931, writ ref'd); Roberts v. California-Western States Life Ins Co., 470 S.W.2d 719 (Tex.Civ.App.—Amarillo 1971, no writ).

Robert Nichols testified that he had been division manager for plaintiff Shupe Bros. Co. in Hereford, Texas, for the entire period of time that Sorenson Egg Farm had been using products supplied by it. James Monk was described by Nichols as a "personal friend of the company," one who transacted business to the company, but never an employee. He stated that Monk did not have a full time relationship with the plaintiff and was not authorized to do anything for or in the name of Shupe Bros. Co. without first contacting him. In regard to the transactions with Sorenson

Egg Farm, Monk would place an order on behalf of Sorenson and Nichols, on behalf of Shupe Bros., would accept the order. After the placing of the order by Monk it would be necessary for Nichols to find a supplier, buy the ingredients and deliver it to the customer. Nichols further stated that Monk did not have any authority to bind Shupe Bros. in any way, but that he could only place the order on behalf of Sorenson and that this had been done numerous times prior to July, 1971. On each occasion Sorenson would make payment after delivery and billing. Mr. Nichols stated that on the occasions in question he believed that he was accepting an order from Monk for Sorenson and that he was looking to Sorenson for payment.

Nels Sorenson stated that he began doing business with Shupe Bros. after Monk visited him and asked if he couldn't sell some ingredients to him. At that time, ingredients were hard to get and he needed a source of supply. He further testified that no one else from Shupe Bros. contacted him concerning selling ingredients. Sorenson said that when he needed ingredients he would place an order with Monk and pay Shupe Bros. by check either by mail or sometimes he gave the check to Monk for delivery to Shupe Bros.

James Monk testified that he was "freelancing," selling ingredients and vitamins and that he contacted Nichols of Shupe Bros. By such contact he stated to Nichols that he knew some people and asked if it would be all right to solicit and see if they could do business with him. Monk further testified that he never worked for Shupe Bros. in any way and that they did not tell him where to go or what to do, but that he would find someone who wanted some ingredients and call Nichols at Shupe Bros. Thereafter, at Nichols' discretion he would either ship or not ship and approve or disapprove credit. Shupe Bros. set the price and paid Monk a tonnage commission. Monk testified that he paid his own expenses, furnished his own car, never received any instructions from Shupe Bros.

and had no authority from Shupe Bros. to tell Sorenson that he could sell for Shupe Bros. any quantity at any price.

■ From a review of the evidence in the light favorable to the finding as required in determining no evidence points, it is our opinion that there is evidence of probative force to support the trial court's findings as to the status of Monk as an agent of Sorenson. It is reasonable to infer from the evidence that Monk had no authority to act for or bind plaintiff Shupe Bros., but instead he was acting as a purchasing agent for defendant Nels Sorenson. Further, without notice of the sale of the business, Shupe Bros. Co. was justified in believing that the status of the account, Sorenson Egg Farm, had not changed and that it could rely on the past favorable credit dealings with Sorenson. In this absence of any control or authority which could be exercised by Shupe Bros. Co. over Monk, a principal-agency relationship was not created. It is further reasonable to infer from the evidence that Shupe Bros. Co. did nothing which would lead Sorenson to believe that Monk was an agent acting for them. When determining whether apparent authority is established, it is always necessary to look to the actions of the alleged principal to determine if a third person could reasonably conclude that the authority existed. See Great American Casualty Co. v. Eichelberger, supra.

Further, after a careful review of all the evidence, both favorable and unfavorable to the findings, it is our opinion that the court's findings as to the status of Monk are not against the great weight and preponderance of the evidence. Appellant's points 7–16 are overruled.

■ By points 1 and 2 appellant contends that there is no evidence to support the trial court's finding that Shupe Bros. Co. sold the ingredients in question to Nels Sorenson or that such finding is against the great weight and preponderance of the evidence. By points 3–5 appel-

lant contends that it was error for the trial court to refuse to find that James Daughtery, or someone on his behalf, ordered and received the ingredients in question, and that James Daughtery was not an agent or employee of Nels Sorenson. It appears from the record that Shupe Bros. Co. did not have any contact with Sorenson other than through Monk. The trial court found and we have agreed that Monk was acting as an agent for Sorenson and the evidence indicates that the orders for the disputed ingredients were placed by Monk after the sale of the business to Daughtery. However, Shupe Bros. Co. had relied on the orders placed by Monk for Sorenson on many occasions in the past and Sorenson had honored all obligations so created. The general rule for such situations is that the acts of an agent within the apparent scope of his authority done after the revocation of his authority are binding on the principal as against one who had formerly dealt with him through the agent and had no notice of the revocation. Anno. Agency-Termination-Notice, 43 A.L.R. 1219 (1926) ; Western Millers Mutual Insurance Co. v. Williams, 231 F.2d 425 (5th Cir. 1956) ; Scott v. Law, Union & Rock Ins. Co., 12 S.W.2d 147 (Tex.Comm'n App. 1929). In the absence of sufficient notice of any termination of the agency to the third party, Shupe Bros., the act of ordering the disputed ingredients by Monk, an agent, would be regarded as the act of Sorenson, the principal. Birge-Forbes Co. v. St. Louis & S.F.R. Co., 53 Tex.Civ.App. 55, 115 S.W. 333 (Tex.Civ.App.—1908, writ ref'd) ; Texas State AFL–CIO v. Brown, 378 S.W.2d 917 (Tex.Civ.App.—Austin 1964, writ ref'd n. r. e.). It has been held that where additional requested findings do not relate to the ultimate or controlling issues or would have a tendency to conflict with the original findings, the requested additional findings need not be made. See Friedman v. Cohen, 429 S. W.2d 510 (Tex.Civ.App.—Houston (14th Dist.) 1968, writ ref'd n. r. e.). Consequently, in view of the original finding of the principal-agency relationship between Sorenson and Monk, the requested findings that James Daughtery, or someone in his behalf, ordered and received the ingredients in question and that James Daughtery was not an agent or employee of Nels Sorenson not need be made for they are immaterial and related only to evidentiary rather than ultimate or controlling issues and would have a tendency to conflict with the original findings. Thus, it was not error for the trial court to refuse to make such additional findings. Appellant's points 1–5 are overruled.

By points 17–23 appellant contends that there is no evidence to support the trial court's findings that Shupe Bros. Co. did not have actual knowledge of the sale of the business prior to July 8, 1971; or that they had no knowledge of facts which would cause a reasonable person to make an investigation prior to that time; or that Monk did not have actual notice of the sale prior to July 8, 1971. In this connection, it is contended, alternatively, that such findings are against the great weight and preponderance of the evidence and that it was error for the trial court to refuse to find that Monk had actual notice of the sale prior to the time of the order for the disputed ingredients. Further, appellant contends by points 24–26 that no evidence supports the finding that two checks drawn by James Daughtery and payable to Shupe Bros. Co. were not drawn on a personal account of James Daughtery or that such finding is against the great weight and preponderance of the evidence ; and that it was error to refuse to find that the checks were drawn on the personal account of James Daughtery.

Nichols testified that he did not discover that the business "Sorenson Egg Farm" had been sold until after the account became delinquent. Sorenson stated that he told Monk that the business was sold on April 16, 1971, at which time he gave a check to Monk for the balance owed to Shupe Bros. Co. at that time. Monk could not recall when he first found out about the sale or if and when he con-

veyed such information to Nichols at Shupe Bros. Co. Daughtery testified that he did not give any notice to Shupe Bros. Co. concerning his buying the business. Therefore, the only possible actual notice given to anyone who had any contact with Shupe Bros. Co. would necessarily have to come from Monk, an agent of Sorenson. Since we have concluded that the trial court did not err by finding that Monk was an agent of Sorenson and not an agent of Shupe Bros. Co., any knowledge possessed by Monk cannot be imputed to Shupe Bros. Co. In each of the cases cited by appellant in support of such contention, it was determined that the one possessing such knowledge was an agent for the person to whom the knowledge was imputed. Therefore, whether Monk had knowledge of the sale of the business prior to placing the order for the disputed ingredients is immaterial and even if it were established that appellant's contention that such negative finding is not supported by evidence, any error relating thereto would be harmless.

In our opinion the evidence preponderates in favor of the finding that Shupe Bros. Co. did not have actual notice of the sale of the business to Daughtery. Sorenson allowed the name "Sorenson Egg Farm" to continue to be used after possession of the business had been given to Daughtery. The only contact Shupe Bros. Co. had with Sorenson was through Monk. Nichols testified that he had no knowledge of the sale of the business. Monk could not with any degree of certainty relate whether or when he gave notice to Shupe Bros. Co. The account was carried in the name of "Sorenson Egg Farm." Therefore, any knowledge by Shupe Bros. Co. must come from the circumstances surrounding the transactions which should have caused a reasonable person to investigate the situation.

Notice includes information presumed by law to have been acquired. 41 Tex.Jur.2d, Notice § 2 (1963). Also, it has been held that whatever puts a person on inquiry ordinarily amounts in law to notice, provided inquiry has become a duty and would lead to knowledge of the facts by the exercise of ordinary diligence and understanding. Flack v. First Natl. Bank of Dalhart. 148 Tex. 495, 226 S.W.2d 628 (1950).

The record indicates that delivery receipts for the disputed ingredients were signed by James Daughtery and that two checks were written by James Daughtery for payment of goods received by Sorenson Egg Farm prior to the order in question. Nichols testified that delivery receipts for goods delivered by Shupe Bros. Co. were required to be signed to indicate receipt of the goods by the purchaser; however, any employee of the purchaser could sign. Further, he testified that the signature on the receipt did not indicate any ownership or liability on the part of the one making the signature for the goods delivered.

■ Shupe Bros. Co. had been selling goods to Sorenson Egg Farm through their Hereford, Texas Office and checks from Nels Sorenson through Sorenson Egg Farm had been either mailed to the Greely, Colorado Office or delivered to the Hereford Office by Monk. The two checks written by Daughtery to Shupe Bros. Co. were mailed to the Greely, Colorado Office of Shupe Bros. Co. and were never seen by Nichols, who was authorized to accept orders. Whether the receipt of checks constitutes notice is dependent upon the circumstances under which they were received. In the case of Anderson v. Smith, 398 S.W.2d 635 (Tex.Civ.App.—Dallas 1965, no writ), the following significant language was quoted from Saco Dairy Co. v. Norton, 140 Me. 204, 35 A.2d 857, 150 A. L.R. 1299 (1944): "It might well be that the check was received in such routine manner that it had little or no significance on the question of knowledge of the plaintiff."

In the instant case, Nichols, the person authorized to accept orders from Sorenson, was never placed under a duty to investigate since he was never aware of the

checks sent by Daughtery. In any event, the mere change in the form and signature of the check does not necessarily mean a change in ownership of the business, nor does it constitute notice to the creditor. Gay Harris and Son, Inc. v. E. H. Schlather & Sons, 423 S.W.2d 467 (Tex.Civ.App. —Austin 1968, no writ); American Smelting & Refining Company v. Ridgway, 412 S.W.2d 675 (Tex.Civ.App.—Houston 1967, writ ref'd n. r. e.); Anderson v. Smith, supra.

After viewing the evidence favorable to the findings and disregarding that which is contrary, we are of the opinion that there is evidence of probative force to support the findings that Shupe Bros. Co. did not have actual knowledge of the sale of Sorenson Egg Farm from Nels Sorenson to James Daughtery, and that the facts would not cause a reasonable person to investigate in order to determine that the business had changed ownership. In addition, a review of all the evidence indicates that such findings are not against the great weight and preponderance of the evidence. Further, it is our opinion that the two checks drawn by James Daughtery payable to Shupe Bros. Co. were not sufficient to place a duty upon Shupe Bros. Co. to make an inquiry as to the ownership of the business. Therefore, it is immaterial to the outcome of the case if in fact there was no evidence or insufficient evidence to support the trial court's finding that such checks were not drawn upon the personal account of James Daughtery and any error relating thereto would be harmless. Mercury Life Insurance Company v. Mata, 310 S.W.2d 130 (Tex.Civ.App.—San Antonio 1958, writ ref'd); Rule 434, Texas Rules of Civil Procedure. Appellant's points 17–26 are overruled.

By points 27–28, the appellant contends there is no evidence to support the trial court's findings that Nels Sorenson authorized James Daughtery to do business under the name of Sorenson Egg Farm, and that such findings are against the great weight and preponderance of the evidence. By points 29–30, the appellant contends that there is no evidence to support the trial court's findings that Nels Sorenson had actual knowledge that James Daughtery was doing business under the name of Sorenson Egg Farm and did not object to or complain about it, and that such findings are against the great weight and preponderance of the evidence.

The record discloses that Sorenson stated that it was agreeable with him for Daughtery to operate the business under the name of Sorenson Egg Farm and that he considered it helpful to the business to continue under the same name. Also, Sorenson recognized that he had a direct interest in the success of the business because if the purchaser paid the indebtedness owed to him it was going to have to come out of the business. Although he contended that he only authorized Daughtery to sell under the name of Sorenson Egg Farm and did not authorize him to buy under such name, the evidence indicates that, in any event, Sorenson did not give any notice to Shupe Bros. that he was selling the business and that he was no longer liable for the debts of Sorenson Egg Farm. Also, Daughtery testified that Sorenson said "He would prefer I did carry on the name just like it was." and that Sorenson ". . . had told Mr. Monk we would go on buying the feed just like we had." In view of the testimony and all of the circumstances, appellant's points 27–30 are overruled.

By point 6, appellant contends that it was error for the trial court to enter judgment against Nels Sorenson for a sum greater than allowed by the Statute of Frauds. The Statute of Frauds is an affirmative defense and must be specifically pleaded in order for one to avail himself of such defense. Rule 94, T.R.C.P.; First National Bank in Dallas v. Zimmerman, 442 S.W.2d 674 (Tex.1969). Appellant did

not plead the Statute of Frauds; therefore, such defense is waived. Appellant's point 6 is overruled.

For the reasons above stated, the judgment of the trial court is affirmed.