ACCEPTED
04-15-00273-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
9/22/2015 12:03:52 AM
KEITH HOTTLE
CLERK

**NO. 04-15-00273-CV**

IN THE
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

09/22/2015 12:03:52 AM

KEITH E. HOTTLE
Clerk

BUDDY CASTEEL AND JARET B. CASTEEL,

*Appellants*

v.

AMELIA STAYTON

*Appellee*

## BRIEF OF APPELLANTS
## BUDDY CASTEEL AND JARET B. CASTEEL

**CHRISTOPHER J. DEEVES**
State Bar No. 00790575

**THE LAW OFFICE OF
CHRISTOPHER DEEVES, P.C.**
1370 Pantheon Way, Suite 110
San Antonio, Texas 78232

(210) 445-8807 (Telephone)
(210) 501-0915 (Facsimile)
chrisdeeves@att.net (e-mail)

**KENNETH E. GRUBBS**
State Bar No. 00798225

**THE LAW OFFICE OF
KENNETH GRUBBS**
4241 Woodcock Drive, Suite C-120
San Antonio, Texas 78228

(210) 490-1292 (Telephone)
(210) 499-4587 (Facsimile)
kengrubbs@sbcglobal.net (e-mail)

**ATTORNEYS FOR
APPELLANTS
BUDDY CASTEEL AND JARET B. CASTEEL**

# IDENTITY OF PARTIES AND COUNSEL

The following is a list of all parties, and the names and addresses of those parties' counsel.

## Parties

| | |
|---|---|
| Buddy Casteel | Appellant/Defendant |
| Jaret B. Casteel | Appellant/Defendant |
| Amelia Stayton | Appellee/Plaintiff |

## Counsel

| | |
|---|---|
| Christopher Deeves<br>The Law Office of Christopher Deeves, P.C.<br>1370 Pantheon Way, Suite 110<br>San Antonio, Texas 78232 | Trial and Appellate Counsel for<br>Appellants/Defendants<br>Buddy Casteel and<br>Jaret B. Casteel |
| Kenneth Grubbs<br>Law Office of Kenneth Grubbs<br>4241 Woodcock Drive, Suite C-120<br>San Antonio, Texas 78228 | Trial and Appellate Counsel for<br>Appellants/Defendants<br>Buddy Casteel and<br>Jaret B. Casteel |
| Bobby Jack Rushing<br>The Rushing Law Firm, PLLC<br>808 London Street<br>Castroville, Texas 78009 | Trial and Appellate Counsel<br>Appellee/Plaintiff<br>Amelia Stayton |

# TABLE OF CONTENTS

Page

IDENTITIES OF PARTIES AND COUNSEL ........................................................ ii

TABLE OF CONTENTS .................................................................................... iii

INDEX OF AUTHORITIES................................................................................iv

STATEMENT OF THE CASE............................................................................. v

ISSUES PRESENTED.........................................................................................vi

STATEMENT REGARDING ORAL ARGUMENT ...........................................vi

STATEMENT OF FACTS ................................................................................... 2

A.    BACKGROUND FACTS................................................................................ 2

B.    PROCEDURAL HISTORY ............................................................................ 4

SUMMARY OF THE ARGUMENT .................................................................... 4

ARGUMENT AND AUTHORITIES.................................................................... 6

I.    STANDARDS OF REVIEW ...................................................................... 6

     A.    "NO EVIDENCE" REVIEW ............................................................. 6

     B.    "FACTUAL SUFFICIENCY" REVIEW ........................................... 6

II.    THE TERMINATION OF AN AGENT'S ACTUAL AUTHORITY ..........7

III.    BASED UPON HER PRIOR ACTUAL AUTHORITY MELISSA HAD
       APPARENT AUTHORITY TO BIND AMELIA WHEN SHE ENTERED
       THE SEPTEMBER 14, 2014 LEASE ................................................... 9

CONCLUSION AND PRAYER ........................................................................ 11

CERTIFICATE OF COMPLIANCE ................................................................. 13

CERTIFICATE OF SERVICE ......................................................................... 13

# INDEX OF AUTHORITIES

**Page**

## CASES

*Cain v. Bain,*
     709 S.W.2d 175 (Tex.1986)................................................................................. 6

*City of Keller v. Wilson,*
     168 S.W.3d 802 (Tex.2005). ..............................................................................6

*Neiman-Marcus Co. v. Viser*,
     140 So.2d 762 (La.App.1962) ...................................................................7. 10

*Sorenson v. v. Shupe Bros. Co.*, 517 S.W.2d 861
     (Tex.Civ.App.—Amarillo 1974, no writ)...............................................5, 7, 10

## RULES

TEX. R. APP. P. 39 ................................................................................................vi

## SECONDARY SOURCES

Floyd R. Mechem, A Treatise on the Law of Agency § 628 (2d ed. 1914) ..............7

RESTATEMENT AGENCY (THIRD) § 3.11 ................................................................. 7-8

# STATEMENT OF THE CASE

**Nature of the Case:** Appeal from trial *de novo* of forcible entry and detainer proceeding.

Appellants Buddy Casteel and Jaret B. Casteel (the "Casteels") leased the property commonly known as 373 South U.S. Highway 83, Leakey, Texas (the "Property") to operate a bar-b-que restaurant named the Hog Pen. Amelia Stayton ("Amelia") is the record owner of the Property. RR Ex. P-1. For almost a decade, Amelia gave her sister, Melissa Baugh ("Melissa") actual authority to enter leases and handle matters related to the Casteels' lease of the Property such as collecting rent. RR 18, 52-53.

On August 11, 2014, Melissa sent the Casteel's notice to vacate on Amelia's behalf. RR 18; RR Ex. P-2.

Thereafter, there were Facebook messages between Jaret Casteel and Amelia concerning Amelia's desire for her family to sell the property. RR Ex. P-4; D-2

On September 14, 2014, Melissa signed a ten year lease extension with the Casteels so that they could continue to operate the Hog Pen on the Property. RR 34; RR Ex. D-4.

Believing she was not bound by that lease, Amelia gave notice to the Casteels to vacate the property. CR 16-17. When the Casteels did not vacate the property, this suit followed. CR 5-18.

**Trial Court:** The Honorable Garry Merritt, Real County Judge

**Trial Court Action:** The trial court granted a judgment of eviction and awarded Amelia her attorney's fees. CR 82-83.

v

## ISSUE PRESENTED

Was there legally or factually sufficient evidence presented showing that the Casteels could no longer reasonably believe that Melissa had actual authority to act as Amelia's agent when Melissa signed the September 14, 2014 lease?

## STATEMENT REGARDING ORAL ARGUMENT

This case presents an opportunity for the Court to address the most recent Restatement of the Law related to agency such that oral argument would benefit the Court. TEX. R. APP. P. 39.

**NO. 04-15-00273-CV**

IN THE
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS

BUDDY CASTEEL AND JARET B. CASTEEL,

*Appellants*

v.

AMELIA STAYTON,

*Appellee*

**BRIEF OF APPELLANTS**
**BUDDY CASTEEL AND JARET B. CASTEEL**

TO THE HONORABLE COURT OF APPEALS:

Appellants Buddy Casteel and Jaret B. Casteel respectfully present their opening brief. For the sake of clarity, Appellants Buddy Casteel and Jaret B. Casteel will be referred to as the "Casteels." Appellee Amelia Stayton will be referred to as "Amelia." The one-volume clerk's record will be cited as CR __. The one-volume reporter's record will be cited by page number as RR p. #. The exhibits to the reporter's record will be referred to as "RR Ex. __."

## STATEMENT OF FACTS

### A. BACKGROUND FACTS

For approximately fifteen years, the Casteels have operated a bar-b-que restaurant known as the "Hog Pen" in Leakey, Texas. RR 15. It is located at the old Exxon station, 373 S. US Highway 83 (the "Property"). Amelia is the record owner of this property. RR Ex. P-1. Amelia gave her sister, Melissa Baugh ("Melissa") actual authority to enter leases, collect rent, and otherwise manage the Property. RR 18.

During the time the "Hog Pen" has operated, there have been a multitude of leases on the property—numerous month to month leases; a couple of one-year term leases; a two-year term lease; and a five-year term lease. RR 42; 54. After the property vested in Amelia in 2006, the leases were all signed by Melissa. RR 53. Amelia never signed a lease. RR 38; 53.

During these leases, the Casteels always paid rent to Melissa. RR 36; 52. The Casteels never paid rent to Amelia. RR 53. Melissa always served as the point of contact for the Property. RR 52-53. Amelia was never involved with management of the property. RR 56.

The last written lease was from July 2011 to July 2012. RR 16; RR Ex. D-1. Amelia states that she prepared this lease, but the lease was signed by Melissa. RR

25; RR Ex. D-1. While Amelia was present at the lease signing, Melissa signed the lease. RR 61. Beginning in July 2012, the Casteels were month to month tenants.

On August 11, 2014, Melissa sent a notice to vacate to the Casteels. RR Ex. P-2. Amelia drafted the notice to vacate. RR 18. However, Amelia testified that because Melissa had signed the lease, Amelia had Melissa sign the notice to vacate. RR 18.

Based upon all these dealings, Jaret Casteel believed that Amelia had given Melissa authority to act as Amelia's agent to transact business with regard to the Property including entering leases on the Property. RR 38.

In early September 2014, Jaret and Amelia communicated via Facebook Messenger regarding trying to agree on new terms for a lease of the Property. RR Ex. D-2; P-4. Amelia indicated she wished to sell the property. RR Ex. D-2. In these messages, Amelia never indicated that Melissa's authority to lease the property had been terminated.

On September 14, 2014, Melissa then signed a new ten-year lease with the Casteels for the Property covering the term from September 2014 to September 2024. RR 34; RR Ex. D-4. The Casteels were to pay $1500/month in rent during the ten-year term. RR 34; RR Ex. D-4. The lease was then notarized on September 18, 2014. RR 35; RR Ex. D-4. Jaret Casteel believed Melissa had the

authority to sign this lease on Amelia's behalf.  RR 39.

## B. PROCEDURAL HISTORY

Denying the validity of the September 14, 2014 lease, Amelia filed a forcible entry and detainer suit against the Casteels seeking to have them vacate the property.   CR 5-18.   Following a trial, the Justice of the Peace granted the eviction.  CR 32-33.  The Casteels appealed to Real County Court.  CR 34-35. Following a trial *de novo*, County Court Judge Garry A. Merritt granted the eviction. CR 82-83.  The Casteels appealed to this Court.  CR 84-85.

## SUMMARY OF THE ARGUMENT

For almost a decade, Amelia gave Melissa actual authority to lease and manage the property at issue.  Melissa signed the leases that Amelia prepared, collected the rent and otherwise addressed issues with regard to the property. RR 38, 52-53.  On August 11, 2014, Amelia prepared a notice to vacate which Melissa signed.  RR 18; RR Ex. P-2.   Amelia believed that Melissa should sign the notice to vacate because she had signed the applicable lease.  RR 18.

On September 14, 2014, Melissa signed another lease on the property with the Casteels.  RR 34; Ex. D-4.  Unbeknown to the Casteels, Amelia apparently terminated Melissa's actual authority to enter leases before then and Amelia refused to be bound by the terms of the new lease.

Regardless of whether Amelia did terminate Melissa's actual authority to

4

lease the property at issue, Amelia is bound by the lease entered into by Melissa on September 14, 2014 because the act of an agent done within the apparent scope of her authority even after the revocation of that authority binds the principal as to one who had formerly dealt with the principal through the agent and who had no notice of the revocation of the authority. *Sorenson v. Shupe Bros. Co.*, 517 S.W.2d 861, 866 (Tex.Civ.App.—Amarillo 1974, no writ).

In this case, the evidence showed that Jaret Casteel believed he had authority to negotiate a new lease with Amelia through Melissa on September 14, 2014 as he and his father had done for years. RR 39. Amelia presented no evidence showing notice to the Casteels that Melissa's authority to enter leases was terminated nor was there any evidence showing that the Casteels could reasonably conclude that Melissa's authority to enter into leases on the property had ended. The Facebook messages between Jaret Casteel and Melissa do not demonstrate that Melissa's authority had been terminated. RR Ex. D-2; P-4.

Based upon the evidentiary record presented in the trial *de novo*, the trial court could only conclude that Melissa acted with apparent authority to bind Amelia when she entered the September 14, 2014 lease. The Casteels had no notice that her decade of authority to enter leases had been terminated. The judgment at issue should be reversed and rendered in the Casteels' favor.

# ARGUMENT AND AUTHORITIES

## I. STANDARDS OF REVIEW

### A. "NO EVIDENCE" REVIEW

The parameters for conducting a "no evidence" review are spelled out in great detail in the Texas Supreme Court decision in *City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005). In *City of Keller*, the Texas Supreme Court adopted the long-established reasoning of Justice Calvert that

> "No evidence" points must, and may only, be sustained when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact.

*Id.* at 810.

### B. "FACTUAL SUFFICIENCY" REVIEW

In reviewing for factual sufficiency, this Court considers and weighs all of the evidence and may conclude that the finding is not supported by factually sufficient evidence only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (*per curiam*).

## II. THE TERMINATION OF AN AGENT'S ACTUAL AUHTORITY

The acts of an agent within the apparent scope of his authority done after the revocation of his actual authority are binding on the principal as against one who had formerly dealt with the principal through the agent and who had no notice of the revocation. *Sorenson v. Shupe Bros. Co.*, 517 S.W.2d 861, 866 (Tex. App.—Amarillo 1974, no writ). Thus, where a third person has been dealing with an agent, a revocation of the agent's authority does not become effective between the principal and the third person until such third person has received actual or constructive notice of such revocation and therefore the third person may assume that the authority of the agent continues until he has information to the contrary. *Neiman-Marcus Co. v. Viser*, 140 So.2d 762, 765-66 (La.App. 1962).

The classic statement of this rationale is:

> Where a general authority is once shown to have existed, it may be presumed to continue until it is shown to have been revoked, and persons who have dealt with the agent as such, or who have had knowledge of his authority and are therefore likely to deal with him, may very properly expect that if the authority be withdrawn, reasonable and timely notice of that fact will be given and they may lawfully presume, in the absence of such notice, that the authority still continues.

1 Floyd R. Mechem, A Treatise on the Law of Agency § 628 (2d ed. 1914).

The modern view on this issue is set forth in the Restatement (Third) Agency §3.11:

7

(1) The termination of actual authority does not by itself end any apparent authority held by an agent.

(2) Apparent authority ends when it is no longer reasonable for the third party with whom an agent deals to believe that the agent continues to act with actual authority.

Comment c from this Restatement provision on "lingering apparent authority is particularly helpful to analysis of this case.

> *Comment c. Lingering apparent authority.* An agent's apparent authority may survive or linger after the termination of actual authority because apparent authority is present when a third party reasonably believes that the agent is authorized to take action and the belief is traceable to a manifestation made by the principal. Once such a manifestation has been made, it remains operative independent of manifestations as between principal and agent that terminate actual authority, or the occurrence of circumstances that otherwise operate to terminate actual authority, including the terms of any agreement between principal and agent, the death of the principal, and the principal's loss of capacity. Apparent authority protects third parties who interact with an agent on the basis of the principal's prior manifestation and who lack notice that the agent's actual authority has terminated.

> Often termed "lingering authority," the doctrine stated in this section recognizes that it is reasonable for third parties to assume that an agent's actual authority is a continuing or ongoing condition, unless and until a third party has notice of circumstances that make it unreasonable so to assume. These circumstances include notice that the principal has revoked the agent's actual authority, that the agent has renounced it, that the agent's authority was limited in duration or to a specific undertaking, or that circumstances otherwise have changed such that it is no longer reasonable to believe that the principal consents to the agent's act on the principal's behalf. (internal references omitted)

> Likewise, illustration 1 of the Restatement presents a similar factual

situation to the one here for purposes of analysis.

> *Illustration 1.* P Corporation, in the recycling business, retains A as a purchasing agent to buy recyclable material on its behalf. A is authorized by P Corporation to buy on terms that commit P Corporation to pay for the material when it arrives at P Corporation's recycling facility. A has purchased recyclables many times from T, who is in the business of building demolition. P Corporation terminates A's actual authority. T has no notice of the termination. As to T, A continues for a reasonable period of time to possess apparent authority to purchase from T on terms comparable to those on which A has made prior purchases on P Corporation's behalf.

This is what happened here.

## III. <u>BASED UPON HER PRIOR ACTUAL AUTHORITY, MELISSA HAD APPARENT AUTHORITY TO BIND AMELIA WHEN SHE ENTERED THE SEPTEMBER 14, 2014 LEASE</u>

There can be no dispute that Amelia vested Melissa with actual authority to enter leases, collect rent and manage the property in question for years. RR 52-53. In fact, one month before the lease in question, Melissa (not Amelia) sent notice to vacate. RR Ex. 2. Amelia had Melissa send the notice to vacate because she had signed the lease pertaining to the notice to vacate. RR 18.

On September 14, 2014, Melissa entered another lease on Amelia's behalf but Amelia claims that Melissa lacked authority to do so and that Amelia is not bound by it. Apparently between August 11, 2014 and September 14, 2014, Amelia stripped Melissa of her actual authority to enter leases on the property in question. However, this did not end Melissa's apparent authority to bind Amelia as to parties like the Casteels who had prior dealings with Melissa acting on behalf

9

of Amelia. Based upon their historical dealings, the Casteels were entitled to sufficient notice of the termination of Melissa's agency or Melissa's act in signing the lease would bind Amelia. *Sorenson*, 517 S.W.3d at 866. Without such notice, the Casteels could assume that Melissa's authority to enter leases on Amelia's behalf continued. *Neiman-Marcus Co.*, 140 So.2d at 765-66. For there to be no "lingering apparent authority" for Melissa to bind Amelia, there had to be evidence either that

- the Casteels had notice that Amelia as principal had revoked Melissa's actual authority to enter leases,

- Melissa had renounced her authority,

- Melissa's authority was limited in duration or to a specific undertaking, or

- that circumstances otherwise have changed such that it was no longer reasonable to believe that Amelia consented to the Melissa's acting on Amelia's behalf.

None of these circumstances was present here. There was no notice given to the Casteels by Amelia that Melissa could no longer lease the property on Amelia's behalf. Melissa did not renounce her authority. Melissa's authority lasted for years—not a limited duration.

Finally, there was not a change in circumstances such that the Casteels could no longer believe that Melissa acted on Amelia's behalf. While Amelia will undoubtedly point to the Facebook messages as such evidence, they do not

10

demonstrate that the Casteels could no longer deal with Melissa. RR Ex. P-4; D-2. In fact, the only evidence presented to the trial court was that Jaret Casteel believed Melissa had the authority to sign this lease on Amelia's behalf. RR 39. Thus, the trial court could only conclude that Melissa had apparent authority to bind Amelia when she entered the September 14, 2014 lease. As such, the judgment of eviction should be reversed and judgment rendered in the Casteels' favor. The Casteels had a valid lease of the property and therefore could not be evicted.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellants Buddy Casteel and Jaret B. Casteel ask the Court to reverse and render judgment in their favor. Alternatively, they ask the Court to reverse and remand this matter for a new trial and for all such other relief to which Appellant is entitled.

Respectfully submitted,

*/s/ Christopher J. Deeves*
**CHRISTOPHER J. DEEVES**
State Bar No. 00790575

**THE LAW OFFICE OF
CHISTOPHER DEEVES, P.C.**
1370 Pantheon Way, Suite 110
San Antonio, Texas  78232
(210) 445-8807 (Telephone)
(210) 501-0915 (Facsimile)
chrisdeeves@att.net (e-mail)

11

**KENNETH E. GRUBBS**
State Bar No. 00798225

**THE LAW OFFICE OF**
**KENNETH GRUBBS**
4241 Woodcock Drive, Suite C-120
San Antonio, Texas  78228
(210) 490-1292 (Telephone)
(210) 499-4587 (Facsimile)
kengrubbs@sbcglobal.net (e-mail)


**ATTORNEY FOR APPELLANTS,**
**BUDDY CASTEEL AND**
**JARET B. CASTEEL**

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 2,783 words (excluding the caption, table of contents, table of authorities, signature, proof of service, certification, and certificate of compliance). This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

*/s/ Christopher J. Deeves*
CHRISTOPHER J. DEEVES

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief of Appellants has been served electronically on the 21st day of September, 2015:

Bobby Jack Rushing
The Rushing Law Firm, PLLC
808 London Street
Castroville, Texas 78009
ATTORNEY FOR APPELLEE
AMELIA STAYTON
VIA ELECTRONIC DELIVERY

*/s/ Christopher J. Deeves*
CHRISTOPHER J. DEEVES